J-A32028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RAY M. BOURGEOIS AND MARY ANN I. BOURGEOIS | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : : | |
| SNOW TIME, INC. AND SKI ROUNDTOP OPERATING CORPORATION | : : : : | No. 1086 MDA 2017 |

Appeal from the Order Entered June 19, 2017
In the Court of Common Pleas of York County Civil Division at No(s):
2015-SU-001900-71

BEFORE:   OTT, J., DUBOW, J., and STRASSBURGER,* J.

MEMORANDUM BY DUBOW, J.:                    **FILED AUGUST 14, 2018**

Appellants, Ray M. Bourgeois and Mary Ann I. Bourgeois, appeal from the Order entered in the York County Court of Common Pleas granting the Motion for Summary Judgment filed by Appellees, Snow Time, Inc. and Ski Roundtop Operating Corporation.[1]   Appellants challenge the trial court's finding that Appellants could not establish that Appellees acted recklessly or with gross negligence.  After careful review, we agree with the trial court that Appellants failed to provide an expert report that articulated a relevant standard of care.  As a result, Appellants failed to establish that Appellees had a duty to Appellants and, thus, acted recklessly or were grossly negligent in

_____

[1] Appellee Ski Roundtop Operating Corporation is a wholly-owned subsidiary of Appellee Snow Time, Inc.

_____
*   Retired Senior Judge assigned to the Superior Court.

placing deceleration mats at the end of the tubing run. We affirm the Order of the trial court.

In the instant matter, Appellant Ray Bourgeois was seriously injured while snow tubing when his tube crossed folded anti-fatigue rubber kitchen mats which Appellees had placed in the deceleration area of the snow tubing run. Appellants' theory of the case is that Appellees acted recklessly and with gross negligence by placing the mats at the end of the tubing run to aid in tube deceleration.

Appellants filed a Complaint against Appellees on July 24, 2015, asserting claims for negligence, gross negligence, recklessness, and loss of consortium.

On February 14, 2017, Appellees filed a Motion for Summary Judgment, which the trial court granted on June 19, 2017.

This timely appeal followed. Appellants filed a court-ordered Pa.R.A.P. 1925(b) Statement of Errors Complained of on Appeal. The trial court filed a Pa.R.A.P. 1925(a) Opinion, incorporating its Opinion in Support of the Order granting the Motion for Summary Judgment.

Appellants raise the following issues for our review:

1. Did the trial court err in granting [Appellees'] Motion for Summary Judgment when it disregarded [Appellants'] liability expert reports, which support the conclusion that, based on the evidence of record, that in placing large rubber kitchen mats, folded in half, on the snow and in the path of its patrons who were traveling at high speeds, [Appellees] acted recklessly and/or with gross negligence?

2. Did the trial court err in granting [Appellees'] Motion for Summary Judgment, by holding that, as a matter of law, [Appellees] were not reckless and/or grossly negligent, in that the trial court disregarded genuine issues of material fact showing recklessness and/or gross negligence, including but not limited to the following:

(a) the manufacturer of the inner tube [Appellees] provided Mr. Bourgeois specifically warned [Appellees] not to place obstacles, such as large folded rubber kitchen mats, in the path of tubing participants;

(b) [Appellees] deliberately placed obstacles—large, heavy, folded kitchen mats that [Appellees] knew were not designed for snow tubing and which would cause tubing participants to come to an abrupt stop during high-speed conditions—directly in Mr. Bourgeois's path;

(c) [Appellees] knew that folding the large mats made them obstacles as the mats were fixed heavy masses that protruded high off the surface of the snow;

(d) [Appellees] had actual and/or constructive knowledge of similar incidents involving the folded kitchen mats prior to Mr. Bourgeois's catastrophic accident;

(e) [Appellees] acknowledged in their written warnings that their tubing runs—including their use of large rubber mats to stop speeding tubing patrons—posed a risk of grievous injury or death to its patrons; and

(f) the risk of grave harm posed by the folded rubber kitchen mats to [Appellees'] snow tubing patrons was obvious and readily apparent to a reasonable person?

3. Did the trial court err in granting [Appellees'] Motion for Summary Judgment, in that the trial court relied upon the testimony of [Appellees'] own employees—in contravention of the ***Nanty-Glo***[][2] holding—to conclude as a matter of law that [Appellees] did not know or have reason to know that using folded kitchen mats to bring its fast-moving snow-tubing patrons to an abrupt stop did not pose a risk of serious bodily harm or death to its patrons?

---

[2] ***Borough of Nanty-Glo v. Am. Surety Co. of N.Y.***, 163 A. 523 (Pa. 1932).

4. Did the trial court err in granting [Appellees'] Motion for Summary Judgment as to [Appellee] Snow Time, Inc., when (a) the Release signed by Mr. Bourgeois did not name Snow Time as a signatory, and (b) there were genuine issues of fact that [Appellee] Snow Time directly participated and acted negligently with regard to Mr. Bourgeois?

Appellants' Brief at 6-7.

## Issues 1 and 2 - Summary Judgment

In their first two issues, Appellants argue that the trial court erred in granting Appellees' Motion for Summary Judgment by disregarding the conclusions of their experts that Appellees' conduct was reckless and grossly negligent. Appellants' Brief at 35, 42. In support, Appellants emphasize certain evidence and argue that the record contains genuine issues of material fact that make the grant of summary judgment inappropriate. Based on the following discussion, however, we find that Appellants did not establish a *prima facie* claim for recklessness or gross negligence and thus, the trial court did not err in granting summary judgment on these issues.

Our standard of review of the grant of a Motion for Summary Judgment is as follows. We "may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion." **Summers v. Certainteed Corp.**, 997 A.2d 1152, 1159 (Pa. 2010). However, when there are no genuine issues as to any material fact and the only issue on appeal is a question of law, our standard of review is *de novo.*" **Id.**

In order to survive a motion for summary judgment, the non-moving party "must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict

in his favor." ***Washington v. Baxter***, 719 A.2d 733, 737 (Pa. 1998) (citation omitted). If the non-moving party fails to establish one of the essential elements of her claim, the movant has valid grounds for summary judgment. ***Babb v. Centre Community Hosp.***, 47 A.3d 1214, 1223 (Pa. Super. 2012) (citation omitted).

It is well-established that when a trial court considers a motion for summary judgment that includes an expert report, the trial court must determine, *inter alia,* whether the expert sufficiently supports his conclusions in his expert report:

> At the summary judgment stage, a trial court is required to take all facts of record, and all reasonable inferences therefrom, in a light most favorable to the non-moving party. This clearly includes all expert testimony and reports submitted by the non-moving party or provided during discovery; and, so long as the conclusions contained within those reports are sufficiently supported, the trial judge cannot *sua sponte* assail them in an order and opinion granting summary judgment. Contrarily, the trial judge must defer to those conclusions, and should those conclusions be disputed, resolution of that dispute must be left to the trier of fact.

***Summers***, ***supra*** at 1161 (citations omitted).

In this case, the trial court concluded as a matter of law that Appellants could not establish a claim for recklessness or gross negligence. The trial court reasoned that since Appellants' experts had not articulated the standard of care that Appellees failed to meet, a factfinder could not conclude that Appellees were aware of that standard of care and disregarded it and, thus, acted recklessly or with grossly negligence:

[Appellants] have not produced sufficient evidence to show that an industry standard exists for placing the mats at the bottom of hills for snow tubers. . . . The absence of any standard on the record makes it difficult for the [c]ourt to find that [Appellees] knew that their conduct of using deceleration mats to stop snow tubers in the runout area would be placing [Appellant] at a higher unreasonable risk of harm than if [Appellees] had placed mats in a different manner, selected to purchase a different kind of mat, or used a different method for stopping the snow tubers.

Trial Ct. Op., 7/19/17, at 18-19. The trial court similarly found no evidence that Appellees "knew or had reason to know that folding the mats created an unreasonable risk of physical harm." **Id.** Appellants challenge these conclusions.

We first turn to the definitions of recklessness and gross negligence. The Pennsylvania Supreme Court, citing the Restatement (Second) of Torts, found that a defendant acts recklessly, when, *inter alia*, he owes a duty to the plaintiff and fails to meet that duty. That is, a defendant is reckless when:

he does an act or **intentionally fails to do an act which it is his duty to the other to do**, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

*Tayar v. Camelback Ski Corp.*, 47 A.3d 1190, 1200 (Pa. 2012), *citing* Restatement (Second) of Torts § 500 (emphasis added). Therefore, an element of recklessness is the failure of the defendant to do any act that he has a duty to do for the plaintiff.

That failure, however, must be an intentional failure. In other words, a plaintiff must establish that a defendant **consciously** acted or failed to act.

- 6 -

Thus, recklessness is more closely aligned with intentional conduct than with negligence, which suggests "unconscious inadvertence." *Id*.

Similarly, an element of gross negligence is the deviation from a standard of care. More precisely, a plaintiff must establish that a defendant's conduct grossly and flagrantly deviated from "the ordinary standard of care." *Bloom v. Dubois Regional Medical Center*, 597 A.2d 671, 679 (Pa. Super. 1991).

Generally, it is for the jury to determine whether a party acted grossly negligent. *Colloi v. Philadelphia Electric Co.*, 481 A.2d 616, 621 (Pa. Super. 1984). However, a court may decide this question as a matter of law where the case is entirely free from doubt and there is no possibility that a reasonable jury could find gross negligence. *Id.*

Expert testimony is often required to opine about a defendant's duty to the plaintiff, *i.e.*, the standard of care that defendant failed to meet. In particular, an expert must opine about the relevant standard of care, the manner in which defendant's actions deviated from the standard, and the manner in which that deviation caused the plaintiff's harm. *See Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) (medical expert report must describe standard of care so as to establish duty, breach of duty, and causation). *See also Zokaites Contracting Inc. v. Trant Corp.*, 968 A.2d 1282, 1287 (Pa. Super. 2009) (in a professional negligence action, expert testimony is required to establish the "relevant standard of care applicable to the rendition of the professional services" and that the

defendant's conduct fell below that standard); ***Truax v. Roulhac***, 126 A.3d 991, 997-99 (Pa. Super. 2015) (discussing plaintiff's use of an engineer's expert testimony to establish the elements of negligence in a premises liability action).[3] If the expert fails to provide the required information, a trial court may conclude that the report is insufficient as a matter of law. ***Id.***

We now turn to the theory of Appellants' case. Appellants allege in their Complaint, *inter alia*, that Appellees' use of folded deceleration mats at the base of its tubing run was reckless and grossly negligent because the use of the mats caused Appellant's snow tube to stop suddenly and unexpectedly, resulting in the serious injuries that Appellant sustained. Appellants assert the same theory on appeal by arguing that Appellees engaged in reckless and grossly negligent conduct when they placed "large, heavy rubber mats in [Appellant's] path … and that the mats could bring [Appellant] to an abrupt, immediate stop."[4] ***See*** Appellants' Brief at 36.

In support of Appellants' response to Appellees' Motion for Summary Judgment, Appellants presented two expert reports that concluded that Appellees engaged in reckless and grossly negligent conduct. Neither expert,

_____

[3] In this case, the parties do not dispute that Appellants needed an expert opinion to establish a standard of care.

[4] Although Appellants allege in their Complaint that Appellees were also reckless and grossly negligent by failing "to provide adequate stopping or deceleration distance," Appellants, on appeal, narrowed their focus to Appellees' use of the "large, heavy rubber mats." Thus, for appellate review purposes, we will only consider Appellants' theory that Appellees engaged in reckless and grossly negligent conduct by placing folded mats at the end of the tubing run-out area.

however, set forth a relevant standard of care and, thus, the duty that Appellees failed to meet.

Appellants' first expert, Mark DiNola, is an expert in the field of ski and snow tubing risk management. When addressing Appellees' standard of care, he did so generally and failed to articulate a specific standard of care or industry standard for the use of deceleration mats in a tubing run-out area. In particular, DiNola first concluded generally that Appellees' "decision to use deliberately deployed folded anti-fatigue rubber mats as a deceleration device constitutes an extreme departure from the **ordinary standards of conduct for a tubing park operator**." DiNola Report, 3/15/17, at 40 (emphasis added). DiNola, however, did not cite or explain the "ordinary standards of conduct for a tubing park operator" from which Appellees' conduct had departed. He just baldly opined that the use of the mats departs from ordinary standards of conduct.

In another portion of the report, however, DiNola discusses a standard of care set forth in National Ski Areas Association's "Tubing and Operations Resource Guide."[5] That "standard of care," however, addresses the length of a tubing run-out, not a standard of care for the use of mats as deceleration devices. Thus, this portion of the expert report does not sufficiently articulate

---

[5] It is unclear if DiNola is even setting forth a standard of care. The report addresses "best practices," which DiNola concedes are simply guidelines. DiNola Report, 3/15/17, at 26. Since the guidelines do not even address the use of mats as deceleration devices, we need not address whether the "best practices" are sufficiently standardized to establish a "standard of care."

the applicable standard of care or conduct to support Appellants' theory of this case.

The second expert report, written by Gordon Moskowitz, Ph.D., a mechanical and biomechanical engineering expert, does not set forth any standards of care for tubing operators. Thus, this report is not relevant to the determination of whether Appellees engaged in reckless or grossly negligent conduct in failing to meet a standard of care by using folded rubber mats in the deceleration area.

Therefore, we are constrained to agree with the trial court that Appellants failed to articulate the appropriate standard of care for the use of deceleration mats. Without such a standard of care, Appellants, as a matter of law, cannot establish Appellees' duty to Appellants and that Appellees knew or should have known about the standard of care. Since Appellants failed to meet this element of recklessness and gross negligence, the trial court properly granted Appellees' Motion for Summary Judgment on this issue.

## Issue 3 - *Nanty-Glo* Rule

In their third issue, Appellants claim that the trial court erred in concluding, solely based on Appellees' employees' testimony, that Appellees were not aware of the risk of harm posed by their use of anti-fatigue mats in the deceleration areas of the tubing run. Appellants' Brief at 55.

The **Nanty–Glo** Rule limits the trial court's use of affidavits or depositions to decide motions for summary judgment. The Rule provides that

a trial court, when ruling on a motion for summary judgment, may not rely solely upon the moving party's own testimonial affidavits or depositions, or those of its witnesses, to determine that no genuine issue of material fact exists. **Dudley v. USX Corp.**, 606 A.2d 916, 918 (Pa. Super. 1992) (citation and footnote omitted).

Before applying the **Nanty–Glo** Rule, however, the trial court must first determine whether the plaintiff has alleged sufficient facts to establish a *prima facie* case:

> **Initially, it must be determined whether the plaintiff has alleged facts sufficient to establish a *prima facie* case.** If so, the second step is to determine whether there is any discrepancy as to any facts material to the case. Finally, it must be determined whether, in granting summary judgment, the trial court has usurped improperly the role of the fact-finder by resolving any material issues of fact. It is only when the third stage is reached that **Nanty–Glo** comes into play.

**DeArmitt v. New York Life Ins. Co.**, 73 A.3d 578, 594–95 (Pa. Super. 2013) (citation omitted and emphasis added).

As discussed above, the trial court properly found as a matter of law that Appellants' experts had not opined about a relevant standard of care and, thus, Appellants could not establish facts sufficient to make out a *prima facie* case of recklessness or gross negligence. Accordingly, Appellants have not demonstrated the applicability of the **Nanty-Glo** Rule. This third issue, thus, warrants no relief.

### Issue 4 - The Release of Snow Time, Inc.

Lastly, Appellants contend that the trial court erred in dismissing the negligence claim against Snow Time, Inc. because the Release at issue did not specifically name or identify Snow Time, Inc. Appellants' Brief at 61. We disagree.

The Release at issue states, in pertinent part, that Appellants release from negligence claims Appellee Ski Liberty Operating Corporation and its owners:

> In consideration of being allowed to use the tubing area at Liberty, Whitetail or Roundtop, I HEREBY AGREE NOT TO SUE AND TO RELEASE, SKI LIBERTY OPERATING CORP**.**, WHITETAIL MOUNTAIN OPERATING CORP. AND **SKI ROUNDTOP OPERATING CORP.**, AS WELL AS **THEIR OWNERS**, AGENTS AND EMPLOYEES FROM ANY AND ALL LIABILITY RELATED TO INJURY, PROPERTY LOSS OR OTHERWISE RELATED TO MY USE OF THE TUBING FACILITY, REGARDLESS OF ANY NEGLIGENCE ON THE PART OF THE SAME. I FURTHER AGREE TO INDEMNIFY AND DEFEND THE SAME, FROM ANY CLAIM FOR LIABILITY RELATED TO INJURY AS A RESULT OF MY OR MY CHILD'S USE OF THE FACILITIES, REGARDLESS OF ANY NEGLIGENCE, RECKLESSNESS OR IMPROPER CONDUCT.

Release (emphasis added).

It is undisputed that Appellee Snow Time, Inc. owns Appellee Ski Roundtop Operating Corporation. Although the Release does not specifically name Appellee Snow Time, Inc., the Release still covers Appellee Snow Time, Inc. because the Release clearly and unambiguously covers the owner of Ski Roundtop Operating Corporation.

Moreover, Appellants do not otherwise contend that the Release is ambiguous. They raise no claims as to the Release's general validity, conspicuity, or enforceability. Further, Appellants cite no authority to support their implication that unless the Release specifically names an owner, the term "owner" does not apply to it.

We agree with the trial court that the Release applied to Appellee Snow Time, Inc., as the owner of Ski Roundtop Operating Corporation. Therefore, the Release applied to general negligence claims against Appellee Snow Time, Inc. and Appellants' claim to the contrary is without merit.

Based on the foregoing, we affirm.

Order affirmed.

Judge Ott joins the memorandum.

Judge Strassburger files a dissenting memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/18

- 13 -