J-A03023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TERRENCE E. BABB, M.D. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| GEISINGER CLINIC; PENN STATE GEISINGER HEALTH SYSTEM | |
| Appellee | No. 981 MDA 2014 |

Appeal from the Order entered February 24, 2014
In the Court of Common Pleas of Centre County
Civil Division at No: 98-1195

BEFORE:  MUNDY, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY STABILE, J.:                **FILED JUNE 03, 2015**

This case returns to this Court following our decision to remand the case to the Court of Common Pleas of Centre County ("trial court") for further proceedings.  On remand, the trial court issued an order granting summary judgment in favor of Appellee Geisinger Clinic ("Geisinger"). Appellant Terrence E. Babb, M.D. ("Dr. Babb"), appeals from the February 24, 2014 order granting summary judgment to Geisinger.  Upon review, we affirm in part, reverse in part, and remand this matter to the trial court for further proceedings.

_____

[*] Former Justice specially assigned to the Superior Court.

As summarized by a previous panel of this Court, the relevant facts and procedural history underlying this appeal, viewed in the light most favorable to Dr. Babb, are as follows.

In June 1995, Geisinger offered, and Dr. Babb accepted, employment as a staff physician for their OB/GYN Clinic in State College.[FN.1]  Dr. Babb commenced his employment on September 1, 1995.  At around the same time, Dr. Oliver was also hired as a staff physician for the OB/GYN Clinic.  In July 1996, Geisinger hired Dr. Chmielewski as a third staff physician at the Clinic.  Over time, the working relationship between Dr. Babb and his two colleagues deteriorated.  Dr. Babb made professional complaints against Dr. Chmielewski.  Subsequently, Dr. Oliver, Dr. Chmielewski and others made professional complaints against Dr. Babb. Pursuant to a routine annual performance review process, Dr. Babb was recommended for reappointment.  However, the discord and additional targeted performance reviews culminated in Geisinger's decision to terminate Dr. Babb's employment.

[FN.1] The parties dispute whether Dr. Babb was a contract or at-will employee.

To that end, on or about May 16, 1997, Dr. Charles Maxin, Senior Vice President for Clinical Operations, and Dr. David Wolfe, Medical Director for Geisinger Medical Group, met with Dr. Babb and requested his resignation.  Dr. Babb refused to resign and he was fired that same day.  The termination was confirmed by letter dated May 19, 1997, which indicated in part that quality of care concerns were at issue.  Accordingly, Dr. Babb was afforded a hearing pursuant to Geisinger's Peer Review Fair Hearing Plan (Fair Hearing Plan) rather than the Involuntary Review Process otherwise provided for by Geisinger's employee policy # 412.  By letter dated June 17, 1997, Counsel for Geisinger advised Dr. Babb of the reasons for termination and advised him of his procedural rights under the Fair Hearing Plan.

The Fair Hearing proceeded with five sessions from November 17, 1997 to February 16, 1998.  During the proceedings, several witnesses testified and exhibits were presented.  Dr. Babb's counsel cross-examined the witnesses. Dr. Babb did not present any additional witnesses on his own behalf.  On March 20, 1998, the Hearing Committee made the following findings.

## III. FINDINGS

1. The evidence supported the allegation that Dr. Babb had been unable to work cooperatively and effectively with his colleagues and office staff.

2. The evidence supported the allegations that Dr. Babb was constantly delinquent in his record keeping, possibly altered medical records, failed to abide by the offices' "lab pending" policy and failed consistently and properly to maintain and document his medical charts.

3. The evidence supported the allegations (with respect to certain medical charts brought to the attention of the committee), that irregularity in medical care provided by Dr. Babb occurred including, failure to properly diagnose, performance of inappropriate operative procedures, lack of proper pre-operative evaluation in urological procedures and antiquated approaches to pelvic examinations.

4. Based on Findings 2 and 3 above, the Committee concludes that Dr. Babb's conduct had an adverse impact on patient care.

Geisinger Defendants' Motion for Summary Judgment, 12/10/10, Exhibit J, Report of Hearing Committee at 7 (emphasis in original). The Clinical Practice Committee, in a letter dated May 28, 1998, accepted the Fair Hearing Committee's findings and affirmed Dr. Babb's termination.

As a consequence of the Fair Hearing results, Geisinger submitted a mandated National Practitioner Data Bank ("NPDB") Report on June 2, 1998. *See Jacksonian v. Temple University Health System Foundation*, 862 A.2d 1275, 1278 (Pa. Super. 2004) (noting the Health Care Quality Improvement Act (HCQIA)[FN.3] "requires hospitals to report information to the Data Bank, and to request information from the Data Bank when physicians join a hospital and every two years thereafter. *See* 42 U.S.C. §§ 11133, 11135"). Geisinger's report included the following statements.

[FN.3] 42 U.S.C.A. § 11101 *et seq.*

This classification is being utilized although the actual adverse action is a termination of employment (as opposed to a pure revocation of privileges) based upon unprofessional conduct, etc. Penn State Geisinger Clinic terminated the practitioner's employment on May 16, 1997 subject to an internal

review. The termination was based upon concerns regarding the practitioner's professional conduct and clinical competency and/or judgment. In addition to certain, specific incidents, the termination was also based upon the practitioner's chronic failure to properly and promptly complete medical records and patient charts. The decision to terminate was upheld by a hearing committee. The Clinical Practice Committee accepted the recommendation of the Hearing Committee and affirmed/finalized the decision to terminate the practitioner's employment. The Hearing Committee determined that the conduct of the practitioner could have an adverse impact on patient care.

[Geisinger Defendants' Motion for Summary Judgment, 12/10/10], Exhibit L, NPDB Adverse Action Report.

During his employment with Geisinger, Dr. Babb enjoyed clinical privileges with Centre County Hospital [("]CCH["]). Upon his termination by Geisinger, those privileges were withdrawn because Dr. Babb no longer had malpractice insurance coverage. Dr. Babb subsequently obtained employment in Clearfield County.

On May 1, 1998, Dr. Babb initiated the instant action in the [trial court] by filing a writ of summons against Geisinger, Dr. Oliver, and Dr. Chmielewski (Geisinger Defendants).[FN.4] On July 24, 1999, Dr. Babb reapplied for clinical privileges with CCH. On November 4, 1999, Dr. Babb filed a complaint in United States District Court for the Middle District of Pennsylvania against Geisinger, CCH, and others, alleging, *inter alia*, discrimination, antitrust violations, breach of contract, civil conspiracy to deny privileges, and interference with contract.[FN.6]

[FN.4] Penn State Geisinger Health System ("PSGHS") and CCH were not named defenants on the May 1, 1998 writ. In the context of this opinion, our discussion of issues relating to Geisinger shall include PSGHS unless otherwise noted.

[FN.6] Although Dr. Babb's reapplication for clinical privileges with CCH was still pending when the federal action was filed, his claims against CCH were premised on the hospital's failure to act in a timely matter.

Meanwhile, CCH, preparing for consideration of Dr. Babb's reapplication, received a copy of the NPDB Adverse Action Report filed by Geisinger. To further assess the basis for the report, CCH requested receipt of the information underlying the report from Geisinger in order to make its own independent evaluation. Geisinger refused to release information unless Dr.

Babb signed a blanket release. Dr. Babb refused to do so. None of the other information available to CCH regarding Dr. Babb's competence and qualifications either prior to or subsequent to the June 2, 1998, NPDB Adverse Action Report was negative. Nevertheless, the Credentials Committee for CCH recommended conditional acceptance citing concerns about the NPDB report and Dr. Babb's working relationship with the hospital's institutions and personnel. CCH's Medical Executive Committee, after considering the Credentials Committee recommendation and reservations, ultimately did not recommend acceptance of Dr. Babb's reapplication. CCH advised Dr. Babb of the Medical Executive Committee's decision on December 11, 2000 and of his rights to a Fair Hearing. Dr. Babb did not request a hearing. On January 29, 2001, in consideration of the Medical Executive Committee's recommendation and Dr. Babb's decision not to request a hearing, CCH's Board of Directors voted not to grant Dr. Babb's reapplication for clinical privileges.

In conjunction with this action, CCH submitted a required NPDB report. The reported stated the following.

Adverse Action Classification Code: DENIAL OF CLINICAL PRIVILEGES (1650)

Date Action Was Taken: 01/29/2001

. . .

Clinical privileges were denied based on adverse reports of the physician's professional competence and professional conduct, either or both of which could adversely affect the health or welfare of patient care at Centre Community Hospital.

. . .

Basis for Action: UNPROFESSIONAL CONDUCT (10) INCOMPETENCE (11)

CCH's Motion for Summary Judgment, 12/10/10, Exhibit T.

Dr. Babb sought review from the U.S. Department of Human Services, which raised concerns about the sufficiency of the NPDB report resulting in a corrected report entered June 27, 2002, as follows.

CLINICAL PRIVILEGES WERE DENIED BASED UPON: Information contained in a national practitioner data bank report filed by the practitioner's former employer advising that the practitioner's employment had been terminated based upon concerns regarding the practitioner's professional conduct and clinical competency and/or judgment that could have an adverse impact on patient care; a

- 5 -

letter received by the Hospital from practitioner's former employer referring the hospital to the data bank report in response to credentials committee reference check with former employer; and practitioner's statements during his interview with the Hospital's credentials committee. The Hospital believed: that practitioner's appointment to the active medical staff would result in an adverse effect on the quality of the medical care provided to OB/GYN patients because practitioner failed to provide evidence that contradicted his former employer's data bank adverse assessment; practitioner's interview statements to the hospital's credentials committee reflected mistrust and animosity towards members of Hospital's OB/GYN Department, Hospital's medical staff leadership and administration; and, practitioner's expressed animosity towards other members of the medical staff including charges against other members of the medical staff of unethical practice would preclude appropriate and necessary working relationships with the medical staff including quality improvement. The Hospital determined that granting privileges to practitioner would be disruptive to the operations of the hospital.

Basis for Action: UNPROFESSIONAL CONDUCT (10)

Dr. Babb's Response in Opposition to Summary Judgment Motion of Defendants, 3/15/11, at 553, Appendix III.

On September 14, 2001, the District Court, with Judge Muir presiding, granted defendants' motions for summary judgment, terminating all federal claims but declining to address Dr. Babb's state claims. Subsequently, the defendants in the federal action sought attorney fees from Dr. Babb, alleging his federal causes of action were frivolous. At the hearing on defendants' motion for attorney fees, Judge Muir permitted Dr. Babb to submit evidence of the basis for his suit, as it pertained to his state of mind in commencing the action. On April 30, 2002, Judge Muir made extensive findings of fact and entered an order denying the motion for attorney fees. *Id.* at 450, Appendix III.

Meanwhile, on October 31, 2001, Dr. Babb filed a seven-count complaint in the still pending instant action against the Geisinger Defendants.[FN.8] On January 25, 2002, Dr. Babb filed an amended six-count complaint, adding CCH as a party and alleging the following causes of action. As against Geisinger, Dr. Babb sought monetary damages, alleging breach of contract (Count I), and illegal retaliation in violation the Pennsylvania Human Relations Act (Count VI). As against all defendants, Dr. Babb sought monetary damages, alleging defamation (Count II),

intentional interference with contractual relations (Count IV), and civil conspiracy (Count V). In Count III, Dr. Babb also sought injunctive relief against Geisinger and CCH relative to the alleged defamation. *See* Dr. Babb's Amended Complaint, 1/25/02. The defendants filed various preliminary objections, which the trial court subsequently overruled. On June 4, 2003, CCH filed its answer and new matter to Dr. Babb's amended complaint. On January 6, 2004, the Geisinger Defendants filed their answer and new matter.

> [FN.8] [Dr. Babb] added PSGHS to the caption on the complaint without notice to any of the parties or requesting leave of the trial court. In the complaint [Dr. Babb] stated, "it is believed and averred that Geisinger Clinic was acquired by Penn State Geisinger Health System (PSGHS), and was known as the Penn State Geisinger Clinic (PSGC) during the periods relevant to this Complaint." [Dr. Babb's] Complaint, 10/31/01, at ¶ 2.

On December 10, 2010, the Geisinger Defendants and CCH each filed a motion for summary judgment. The Geisinger Defendants and CCH sought summary judgment or partial summary judgment on the following grounds. Relative to Counts V and VI of Dr. Babb's amended complaint, civil conspiracy and retaliation respectively, the Geisinger Defendants alleged the claims were barred by *res judicata* and collateral estoppel based on previous holdings of the District Court. . . . Relative to Dr. Babb's claim for monetary damages in Counts I, II, IV, V, and VI, the Geisinger Defendants and CCH aver they are covered by the HCQIA and Pennsylvania Peer Review Protection Act [(PRPA)][FN.10] immunity. Relative to Count I, breach of contract, the Geisinger Defendants maintain that, as a matter of law, Dr. Babb was an at-will employee, precluding a contract based claim or, in the alternative, that Dr. Babb failed to allege any breach to his detriment. Relative to Counts II and III, the Geisinger Defendants and CCH contend Dr. Babb has failed to make out a case for defamation as a matter of law since the alleged statements fall outside the statute of limitations, involve expressions of opinion, or are privileged. . . . Relative to Dr. Babb's Count III request for injunctive relief, the Geisinger Defendants and CCH allege the relief requested is unavailable as a matter of law because the Data Bank Report at issue was justified, privileged and mandated and an adequate remedy exists at law. Relative to Count IV, interference with contract, the Geisinger Defendants and CCH aver that Dr. Babb has failed to offer evidence of improper motive, intention or justification or that there was a reasonable probability that privileges would have been granted by CCH. . . . Finally, the Geisinger Defendants sought summary judgment relative to PSGHS since the entity no longer exists. *See* Geisinger Defendants' Motion for Summary Judgment, 12/10/10; CCH's Motion for Summary Judgement, 12/10/10.

[FN.10] 63 P.S. §[§] 425.1-425.4.

On May 12, 2011, the trial court issued an opinion and order granting summary judgment in favor of all defendants as to all counts and dismissed all claims with prejudice. The trial court based its grant of summary judgment for the counts seeking damages on the Geisinger Defendants' and CCH's claims of HCQIA immunity. In addition, the trial court noted, "due to the finding that the parties acted properly in their actions against Dr. Babb, the [trial c]ourt finds that [i]njunctive relief is improper and unavailable." Trial Court Opinion, 5/12/11, at 7. On June 9, 2011, Dr. Babb filed a timely notice of appeal.

*Babb v. Ctr. Cmty. Hosp.*, 47 A.3d 1214, 1217-22 (Pa. Super. 2012) (some footnotes omitted), *appeal denied*, 65 A.3d 412 (Pa. 2013).

On appeal, a panel of this Court affirmed in part and reversed in part the trial court's order. The panel affirmed the trial court's grant of summary judgment in favor of Dr. Oliver, Dr. Chmielewski, and CCH on the basis of HCQIA immunity and failure to raise a proper claim for injunctive relief against CCH. The panel, however, reversed the trial court's grant of summary judgment in favor of Geisinger on the basis of HCQIA immunity because there existed an issue of material fact regarding Geisinger's compliance with 42 U.S.C.A. § 11112(a). The panel also declined to review additional issues relating to Geisinger's summary judgment motion that were not addressed by the trial court. The panel, as a result, reversed the trial court's May 12, 2011 order only to the extent it granted Geisinger's motion for summary judgment and remanded the case for further proceedings.

On remand, the trial court ordered Geisinger to file another summary judgment motion and brief relating only to issues that the trial court did not address in its May 12, 2011 order. *See* Trial Court Order, 10/15/13. The

trial court also directed Dr. Babb to respond to Geisinger's summary judgment motion within 15 days. *See id.*

On November 4, 2013, Geisinger filed its motion for summary judgment, raising seven issues. Geisinger first argued it was entitled to summary judgment as a matter of law, because the doctrines of *res judicata* and collateral estoppel barred Dr. Babb's claims for civil conspiracy and retaliation. Second, Geisinger argued it was entitled to summary judgment as a matter of law, because Section 425.3(a) of the PRPA, 63 P.S. § 425.3(a), rendered Geisinger immune from liability. Third, Geisinger argued that Dr. Babb's breach of contract claim failed as a matter of law, because Dr. Babb was an at-will employee who could be terminated with or without cause. Geisinger also argued that, to the extent Dr. Babb claimed Geisinger did not follow a proper procedure with respect to his termination, Dr. Babb's claim was barred by collateral estoppel. Fourth, Geisinger argued that Dr. Babb's defamation claim, to the extent it was based on statements made prior to May 1, 1997, was barred by the one-year statute of limitations under 42 Pa.C.S.A. § 5523. Fifth, Geisinger argued Dr. Babb's request for permanent injunction failed as a matter of law, because the NPDB Report was justified and required by law. Sixth, Geisinger argued Dr. Babb's intentional interference with contractual relations claim failed, because Dr. Babb could not establish the absence of a privilege or justification on the part of Geisinger. Lastly, Geisinger argued that PSGHS be dismissed from the action because PSGHS no longer existed.

Upon Dr. Babb's request for a continuance, the trial court extended the time for Dr. Babb to respond to Geisinger's motion for summary judgment. *See* Trial Court Order, 12/04/13. On December 13, 2013, Dr. Babb filed a brief in opposition to Geisinger's motion for summary judgment. Citing specific findings made by Judge Muir in the federal action, Dr. Babb argued he was not collaterally estopped from raising a claim for civil conspiracy. Second, Dr. Babb argued the decision of the prior panel of this Court precluded Geisinger from using PRPA's immunity provision to seek summary judgment, because disputed issues of material fact existed as to malice and bad faith on the part of Geisinger. Third, Dr. Babb argued that Geisinger's motion for summary judgment failed with respect to his breach of contract claim, because issues of material fact existed as to Dr. Babb's employment status and because Geisinger failed to meet its contractual obligations. Fourth, Dr. Babb contended that his defamation claim was not premised on statements made prior to May 1998, but rather on statement made, *inter alia*, during the Fair Hearing process and in the NPDB Report. Fifth, Dr. Babb argued that, contrary to Geisinger's argument in support of its summary judgment motion, he was entitled to a permanent injunction with respect to the NPDB Report. Sixth, Dr. Babb argued sufficient evidence of record existed as to his intentional interference with contract claim. In support of this argument, Dr. Babb

> incorporate[d] by reference here the summary of fact pertaining to the adverse testimony of Dr. Babb in concurrent litigation and the actions of Geisinger agents and employees detailed in the Brief of [Dr. Babb] relating to CCH in the Superior Court at Pages

19 to 51, detailing wrongful acts of [Geisinger] agents and employees in the process.

Dr. Babb's Brief in Response to Geisinger Motion for Summary Judgment, 12/16/13, at 71. In addition, Dr. Babb relied upon averments made in his complaint to establish the NPDB Report "had the purpose and effect of wrongfully interfering with prospective contractual relations, locally and globally." *Id.* Finally, Dr. Babb argued Geisinger waived or abandoned its challenge to the inclusion of PSGHS as a party to this action.

On February 24, 2014, the trial court issued an opinion and order, granting summary judgment in favor of Geisinger. In its opinion, the trial court first noted that Dr. Babb failed to file a response to Geisinger's motion for summary judgment, but instead filed a brief in opposition. *See* Trial Court Opinion, 2/24/14, at 4. The trial also noted Dr. Babb's brief contained only citations to the reproduced record that Dr. Babb had submitted to the prior panel of this Court on his last appeal. As a result, the trial court concluded Dr. Babb's brief in opposition "and its citations are not evidence." *Id.* Based on this conclusion, the trial court determined Dr. Babb failed to challenge the statement of facts contained in Geisinger's November 4, 2013 motion for summary judgment. *Id.* The trial court, therefore, held that the facts for the purpose of summary judgment in this case were uncontroverted. *Id.*

The trial court then proceeded to address Geisinger's affirmative defenses of *res judicata* and collateral estoppel as well as peer review immunity under Section 425.3(a) of the PRPA. With respect to *res judicata*

- 11 -

and collateral estoppel, the trial court determined that the September 14, 2001 order of the federal district court granting summary judgment in favor Geisinger barred Dr. Babb from re-litigating his civil conspiracy and retaliation claims *sub judice*. *Id.* at 6. Regarding the peer review immunity under PRPA, the trial court determined Geisinger was immune from liability for money damages under Section 425.3(a). *Id.* at 11-12. With respect to Dr. Babb's breach of contract claim, the trial court concluded that he was an at-will employee who was terminated for cause and that Geisinger followed proper post-termination procedures as outlined in Dr. Babb's practice agreement. *Id.* at 13. The trial court further concluded Dr. Babb's defamation claim, premised in part on the Fair Hearing process and the NPDB Report, was without merit, because Dr. Babb failed to identify the alleged defamatory statements. In addition, the trial court determined "[t]o the extent it is based on Geisinger's statements in the data bank report summarizing the reasons for [Dr.] Babb's termination, the claim fails because the communication was privileged." *Id.* at 15. With respect to Dr. Babb's request for a permanent injunction, the trial court concluded Dr. Babb failed "to show a clear right to relief, [and] has not shown any urgent need for immediate relief or harm that cannot be remedied by damages. The case has been pending for over fifteen years." *Id.* at 16. Addressing Dr. Babb's claim for intentional interference with contractual relations, the trial court concluded the claim failed because it was "based on the data bank report and Geisinger's communications with [CCH] concerning [Dr.] Babb's

application for privileges." *Id.* at 17. Finally, the trial court concluded that PSGHS was not a proper party to the action because Dr. Babb failed to name it in his writ of summons and PSGHS did not exist when Dr. Babb filed his complaint. Additionally, the trial court noted Dr. Babb did not provide any evidence or legal argument supporting PSGHS's inclusion as a party to the action. *Id.* at 17-18.

On appeal,[1] Dr. Babb raises seven issues for our review, reproduced here verbatim:

> 1. Did the [t]rial [c]ourt err by treating the remand for disposition of previously briefed and argued motion as a new motion and declining to consider the complete record?
>
> 2. Did the [t]rial [c]ourt erred [sic] in application of collateral estoppel and *res judicata*[?]
>
> 3. Did the [t]rial [c]ourt erred [sic] in finding peer review immunity broader than HCQIA immunity and applicable to claims here[?]
>
> 4. Did the [t]rial [c]ourt erred [sic] in finding that no material issue of fact existed as to the breach of contract claims[?]
>
> 5. Did the [t]rial [c]ourt erred [sic] in finding no material issue of fact existed as to the defamation claims[?]
>
> 6. Did the [t]rial [c]ourt erred [sic] in finding no material issue of fact existed as to the intentional interference of contract claim[?]
>
> 7. Did the [c]ourt erred [sic] in finding Defendant Penn State Geisinger Health System was not a property [sic] party as part of the joint venture during relevant conduct[?]

Dr. Babb's Brief at 2.[2]

---

[1] The trial court did not order Dr. Babb to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

We are mindful that:

[o]ur scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Hovis v. Sunoco, Inc.*, 64 A.3d 1078, 1081 (Pa. Super. 2013) (quoting

*Cassel-Hess v. Hoffer*, 44 A.3d 80, 84-85 (Pa. Super. 2012)).

Before we address the issues on appeal, we note with disapproval Dr. Babb's liberal noncompliance with the Pennsylvania Rules of Appellate Procedure as they relate to briefing and the reproduced record.[3] Because there are numerous deficiencies in Dr. Babb's brief, we address only those that are particularly egregious. Dr. Babb's principal brief contains over 70 pages and incorporates an additional 17 pages from a previous brief filed in

---

*(Footnote Continued)* ———————————

[2] We note Dr. Babb's brief on appeal largely mirrors his December 16, 2013 brief in opposition to Geisinger's motion for summary judgment filed below.

[3] The prior panel of this Court also disapproved of Dr. Babb's failure to comply with the appellate rules governing briefs and reproduced record. *See Babb*, 47 A.3d at 1230, n.14.

this Court, a copy of which he fails to provide to this Court in this appeal.[4]

Given the length of his principal brief, Dr. Babb failed to certify that it contained less than 14,000 words, as required under Pa.R.A.P. 2135(d). Dr. Babb's brief also fails to comply with Pa.R.A.P. 2117 (Statement of the Case), because his statement of the case is, *inter alia*, neither brief nor devoid of any argument. In fact, his statement of the case spans 53 pages, which includes citations to entire depositions and other lengthy documents in the reproduced record. The argument section of his brief, however, is short (less than 16 pages) and contains little citation to the record or legal authority, in violation of Pa.R.A.P. 2119.

Dr. Babb's reproduced record, which was filed in five volumes containing over 1500 pages and compiled in no particular order, does not contain a table of contents in violation of Pa.R.A.P 2174. The reproduced record also fails to comply with the requirements of Pa.R.A.P. 2152 and 2154 insofar as it does not include any relevant docket entries, pleadings or the summary judgment motion filed by Geisinger following remand to the trial court. Although the reproduced record is paginated, we have found instances were Dr. Babb repeats the same page number, such as 476a. Finally, Dr. Babb's reproduced record contains many excerpts or passages of

_____

[4] In addition to the nearly 100 pages in his principal brief, Dr. Babb also filed a 14-page reply brief to further flesh out his arguments on appeal.

notes of testimony that are not accompanied by any cover page indicating when or where the testimony was taken.

Nonetheless, despite Dr. Babb's failure to comply in many ways with the appellate procedural rules, we decline to quash his appeal. By doing so, we are cognizant of the fact that Dr. Babb's noncompliance foists upon us the nearly impossible task of reviewing his arguments. We, however, shall review and address only arguments we can discern from Dr. Babb's brief. We remind Dr. Babb that "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant." **Commonwealth v. Gould**, 912 A.2d 869, 873 (Pa. Super. 2006); **see also Schenk v. Schenk**, 880 A.2d 633, 639 (Pa. Super. 2005) ("It is not the duty of the Superior Court to scour the record and act as appellant's counsel.") (citation omitted).[5]

We first address Dr. Babb's first, fourth, fifth and sixth issues as they relate to whether a factual dispute exists in this case. In his first assertion of error, Dr. Babb essentially argues the trial court erred in concluding Dr. Babb failed to challenge the facts set forth in Geisinger's November 4, 2013 motion for summary judgment, because Dr. Babb did not file a response under Pa.R.C.P. No. 1035.3, but submitted instead a brief citing

_____

[5] The principles stated in criminal cases regarding the Pennsylvania Rules of Appellate Procedure are "equally applicable" in civil cases because the rules apply to both civil and criminal cases. **Lineberger v. Wyeth**, 894 A.2d 141, 148 n.4 (Pa. Super. 2006).

the reproduced record that he submitted to this Court on his previous appeal.[6]  In this regard, Dr. Babb argues the trial court declined to consider his December 16, 2013 brief in opposition to Geisinger's November 4, 2013 motion for summary judgment and the attendant reproduced record, because they were not evidence.

Pennsylvania Rule of Civil Procedure 1035.3, relating to response to summary judgment, provides in pertinent part:

(a) Except as provided in subdivision (e), the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying

(1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or

(2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced.

. . . .

(d) Summary judgment may be entered against a party who does not respond.

Pa.R.C.P. No. 1035.3(a), (d).  To the extent Dr. Babb suggests that Rule 1035.3 does not prescribe a particular format for responding to a motion for

_____

[6] To the extent Dr. Babb claims the trial court erred in treating the remand for disposition of a previously briefed and argued motion for summary judgment as a new motion for summary judgment, we decline to address this issue because Dr. Babb waived it by failing to raise it in the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

summary judgment, we agree. The clear and unambiguous language of Rule 1035.3 merely requires that a party respond to a summary judgment motion "within thirty days after service of the motion identifying," *inter alia*, factual disputes. Accordingly, based on the clear language of Rule 1035.3, the trial court erred in declining to treat Dr. Babb's December 16, 2013 brief as a **response** in opposition to Geisinger's November 4, 2013 motion for summary judgment.

With the foregoing in mind, and treating Dr. Babb's brief (in opposition to Geisinger's motion for summary judgment) as a response under Rule 1035.3, we must determine whether the facts set forth in Geisinger's summary judgment motion are undisputed. Thus, we next address Dr. Babb's fourth argument that the trial court erred in finding that no material issues of fact existed as to Dr. Babb's breach of contract claim.

In this regard, Dr. Babb argues that, contrary to Geisinger's assertions, he "was not an at-will employee subject to unreviewable, summary discharge, without cause." Dr. Babb's Brief at 65. Dr. Babb also argues

> Geisinger violated the contract provision requiring Dr. Babb's participation in the selection of a team leader. Geisinger violated the provision requiring consultation regarding the recruitment of Dr. Charles. Geisinger breached the contract requirement regarding the requirement that he be given pre-termination notice and opportunity to respond regarding any alleged deficiencies in performance.

*Id.* at 66. In support of his breach of contract claim, Dr. Babb points out that the practice agreement, which he signed on June 30, 1996, provides in

pertinent part that "[*p*]*rior to* any termination initiated by Geisinger for or without cause, however, [Dr. Babb] *shall be afforded an opportunity for a review of the underlying circumstances* therefore [sic], pursuant to Geisinger's published guidelines governing such reviews, as amended and in effect from time to time." Dr. Babb's Brief in Opposition to Geisinger Motion for Summary Judgment, 12/16/13, at 12 (citing Practice Agreement, 6/30/95, at 1) (emphasis added). Dr. Babb cites his own testimony to support his argument that Geisinger failed to advise him of any disciplinary issues prior to terminating his employment. Reproduced Record (R.R.) at 1482.[7] In addition, Dr. Babb points to a June 8, 1995 letter authored by Dr. Maxin, which provides in pertinent part:

> The Practice Agreement along with the Employee Benefits Summary, the Professional Staff Handbook and this letter *form the basis of the agreement between you and Geisinger*.
>
> . . . .
>
> You will participate in the decision along with your colleagues and Geisinger management to designate leadership position for OB/GYN in Centre County. You will also have the opportunity to participate in the hiring and firing of any employees in the OB/GYN department.

June 8, 1995 Letter by Dr. Maxin, at 1-2 (emphasis added).

_____

[7] We cannot discern from the reproduced record when, where or in what context Dr. Babb's testimony was taken. Dr. Babb provides us only with excerpts or selected pages of testimony that are riddled with annotations. As noted earlier, the reproduced record supplied by Dr. Babb fails to comply in any meaningful way with the requirements of the Rules of Appellate Procedure governing reproduced records and, as a result, renders our review of this appeal extraordinarily challenging.

Geisinger on the other hand argues only that the "with or without cause" language contained in the practice agreement establishes conclusively that Dr. Babb was an at-will employee. Geisinger's Brief at 42-43. In so doing, Geisinger downplays the significance of the June 8, 1995 letter by Dr. Maxin that seemingly casts doubt over Geisinger's at-will argument.

Viewing the record in the light most favorable to Dr. Babb, as the non-moving party, and resolving all doubts as to the existence of a genuine issue of material fact against Geisinger, as the moving party, we conclude that the trial court erred in granting Geisinger's motion for summary judgment with respect to Dr. Babb's breach of contract claim. As the record evidence cited in support of Dr. Babb's breach of contract claim indicates, a factual dispute exists as to whether (1) Dr. Babb was an at-will employee, (2) Geisinger afforded Dr. Babb's an opportunity to review the underlying grievances prior to termination and (3) Geisinger had any contractual obligations to Dr. Babb that Geisinger failed to honor during the course of Dr. Babb's employment with Geisinger.

We next address Dr. Babb's fifth argument that the trial court erred in finding no material issue of fact existed as to the defamation claim. To support this argument, Dr. Babb points out that disputed issues of material fact exist with respect to statements made by Geisinger at the time of his

termination, during the Fair Hearing process and in the NPDB Report.[8]

Dr. Babb's Brief at 68. As the trial court and Geisinger note, however, Dr. Babb fails to identify with specificity what statements form the basis of his defamation claim. *See* Trial Court Opinion, 2/24/14, at 15 (Dr. Babb "failed to specifically identify the time, place, publisher, and recipients of the statements he relies on to support his defamation claim."). Accordingly, given the lack of evidence offered by Dr. Babb to support his defamation claim, we find no basis upon which to disagree with the trial court's conclusion that there exists no genuine issue of material fact,[9] or with its conclusion granting Geisinger summary judgment on this claim.

In his sixth assertion of error, Dr. Babb argues that the trial court erred in finding that no issues of material fact existed with respect to his interference with prospective contractual relations claim. To support his argument, Dr. Babb asserts

> [t]he Complaint plainly asserts that employees and agents of PSGHS acted in concert to interfere with Dr. Babb's attempt to secure staff privileges at CCH, that the interference was

---

[8] In his reply brief, Dr. Babb directs our attention to pages 27 through 55, where he claims we can find "detailed" facts relating to his defamation claim. Dr. Babb's Reply Brief at 10. Our review of the referenced pages in Dr. Babb's brief does not yield any statements—much less detailed statements—that are defamatory. At any rate, to the extent there may be statements that Dr. Babb considers defamatory, it is incumbent upon him to specify what they are. As mentioned, Dr. Babb cannot expect this Court to scour the record for evidence supporting his claims.

[9] As mentioned *infra*, statements made during the Fair Hearing process or the resulting NPDB Report are covered by PRPA's immunity provisions.

> wrongful, with improper motive and beyond the scope of any privilege. The Complaint also specifically alleges that PSGHS Data Bank report was false, defamatory and had the purpose and effect of wrongfully interfering with prospective contractual relations, locally and globally. This is separate actionable interference.

Dr. Babb's Brief at 70. Because Dr. Babb fails to offer any evidence beyond what he pled in his complaint to support this claim, we agree with the trial court that no issues of material fact exist. *See* Pa.R.C.P. No. 1035.3(a) (an adverse party may not rest upon the mere averments or denials in its pleadings); *see also Bank of America, N.A. v. Gibson*, 102 A.3d 462, 464 (Pa. Super. 2014) (noting "the nonmoving party cannot rest upon the pleadings, but rather must set forth specific facts demonstrating a genuine issue of material fact"); *see also Downey v. Crozer-Chester Med. Ctr.*, 817 A.2d 517, 524 (Pa. Super. 2003) ("Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment."). Summary judgment in Geisinger's favor was therefore appropriate on this claim.

We now turn to Dr. Babb's second assertion of error. Dr. Babb argues the trial court erred in its application of collateral estoppel and *res judicata* with respect to his civil conspiracy claim. Specifically, Dr. Babb has alleged Geisinger "engaged in a civil conspiracy to wrongfully discharge and denied [sic] privilege, defame and interfere with existing and prospective

contractual relations of Dr. Babb."[10]  Dr. Babb's Complaint, 1/25/02, at

¶ 254.

Discussing the preclusive doctrines of *res judicata* and collateral

estoppel, our Supreme Court remarked:

> We acknowledge that the term "*res judicata*" is a somewhat
> sloppy term and that it is sometimes used to cover both *res
> judicata* itself (claim preclusion) as well as collateral estoppel
> ("broad" *res judicata* or issue preclusion).  Collateral estoppel,
> broad *res judicata* or issue preclusion "forecloses re-litigation in
> a later action, of an issue of fact or law which was actually
> litigated and which was necessary to the original judgment."
> ***City of Pittsburgh v. Zoning Board of Adjustment of
> Pittsburgh***, [] 559 A.2d 896, 901 ([Pa.] 1989).

***Hebden v. W.C.A.B. (Bethenergy Mines, Inc.)***, 632 A.2d 1302, 1304

(Pa. 1993).  Our Supreme Court also remarked:

> Under the doctrine of *res judicata* issue preclusion,[FN.2] when an
> issue of fact or of law is actually litigated and determined by a
> valid final judgment, and determination of the issue was
> essential to judgment, the determination on that issue is
> conclusive in a subsequent action between the parties, whether
> on the same or a different claim.  ***Clark v. Troutman***, 502 A.2d
> 137 ([Pa.] 1985).  As we have noted in our cases, issue
> preclusion serves the twin purposes of protecting litigants from
> assuming the burden of re-litigating the same issue with the
> same party, and promoting judicial economy through preventing
> needless litigation.  ***Id.***
>
> > [FN.2] "*Res judicata*" means "a thing adjudged" or a
> > matter settled by judgment.  Traditionally, American
> > courts have used the term *res judicata* to indicate
> > claim preclusion, *i.e.*, the rule that a final judgment
> > rendered by a court of competent jurisdiction on the
> > merits is conclusive as to the rights of the parties
> > and constitutes for them an absolute bar to a
> > subsequent action involving the same claim, demand
> > or cause of action.  ***See, e.g.***, ***Matchett v. Rose***, 36
> > Ill. App.3d 638, 344 N.E.2d 770 (1976).  This is

---

[10] On appeal, Dr. Babb challenges only the trial court's ruling with respect to the prospective nature of his interference with contract claim.

distinguished from the traditional doctrine of collateral estoppel, or issue preclusion, which holds that when a particular issue has already been litigated, further action on the same issue is barred. *See*, *e.g.*, *City of St. Joseph v. Johnson*, 539 S.W.2d 784 (Mo. App. 1976). We have interpreted the "modern doctrine of *res judicata*" as incorporating both claim preclusion, or traditional *res judicata*, and issue preclusion, or traditional collateral estoppel.

*McNeil v. Owens-Corning Fiberglas Corp.*, 680 A.2d 1145, 1147-48 (Pa. 1996) (citation omitted).

In *BuyFigure.com, Inc. v. Autotrader.com, Inc.*, 76 A.3d 554 (Pa. Super. 2013), *appeal denied*, 84 A.3d 1061 (Pa. 2014), we held "*res judicata* and collateral estoppel applied to bar [a]ppellant's claims, because the claims and issues in both the federal and state courts had identical characteristics, and the parties were either identical or had privity with one another, so as to be bound in state court by the decisions and rulings of the federal court." *BuyFigure.com, Inc.*, 76 A.3d at 560. We explained:

As [the Pennsylvania Commonwealth] Court recently decided in *Callowhill Center Associates,* [*LLC v. Zoning Board of Adjustment*, 2 A.3d 802 (Pa. Cmwlth. 2010)], the doctrine of *res judicata*/collateral estoppel applies not only to matters decided, **but also to matters that could have, or should have, been raised and decided in an earlier action.** Our decision in *Callowhill Center Associates* recognized well-settled precedent that collateral estoppel applies if there was adequate opportunity to raise issues in the previous action. *Stevenson v. Silverman*, 417 Pa. 187, 208 A.2d 786 (1965); *Hochman v. Mortgage Finance Corporation*, 289 Pa. 260, 137 A. 252 (1927).

*Bell v. Township of Spring Brook*, 30 A.3d 554, 558 (Pa. Cmwlth. 2011). (emphasis supplied).

Significantly, as emphasized by our Pennsylvania Supreme Court:

> As pertinently stated in **Hochman**[], 137 A. [at] 253; 'The [doctrine of *res judicata* ] should not be defeated by minor differences of form, parties, or allegations, when these are contrived only to obscure the real purpose,—a second trial on the same cause between the same parties. The thing which the court will consider is **whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties actually had an opportunity to appear and assert their rights**. If this be the fact, then the matter ought not to be litigated again, nor should the parties, by a shuffling of plaintiffs on the record, or by change in the character of the relief sought, be permitted to nullify the rule.' (Emphasis supplied.)

**Stevenson** [], [] 208 A.2d [at] 788[.]

**BuyFigure.com, Inc.**, 76 A.3d at 561 (emphasis added).

In this case, the parties dispute only whether the ultimate and controlling issue, *i.e.*, the existence of a conspiracy between Geisinger and CCH, was decided finally in the federal action, which concluded on the merits on September 14, 2001. To buttress his argument against the preclusive doctrine of *res judicata*, however, Dr. Babb principally cites "findings of fact" outlined in Judge Muir's April 30, 2002 opinion issued in connection with Geisinger's and CCH's motion for attorney's fees and costs. Dr. Babb's Brief at 61-62.

Dr. Babb's reliance on the April 30, 2002 decision, however, is misleading. A careful reading of the April 30, 2002 opinion reveals that the opinion contained very limited factual findings. In fact, in the prefatory section of his opinion, Judge Muir expressly claimed "[f]indings of fact or conclusions of law set forth below which **are not disputed** are noted with a **"U"** in parenthesis after such finding." Federal Court Opinion, 4/30/02, at 5

(emphasis added). Thus, the "factual findings" upon which Dr. Babb relies are not findings rendered by Judge Muir as they were not noted with a "U," but rather appear to be Judge Muir's recitation of facts as alleged by Dr. Babb. Moreover, as the trial court aptly found:

> The issue decided in the federal court's fee decision was whether [Dr.] Babb's claims were frivolous and without foundation, entitling Geisinger to an award of attorneys' fees. The decision related only to reasonableness and [Dr.] Babb's state of mind. The merits were not actually litigated or resolved by that decision, and thus *res judicata* does not apply.

Trial Court Opinion, 2/24/14, at 9.

Thus, having addressed Dr. Babb's unwarranted reliance on Judge Muir's April 30, 2002 opinion, which has no preclusive effect, we must determine whether Judge Muir's September 14, 2001 order on the merits bars Dr. Babb's civil conspiracy claim *sub judice*. In his September 14, 2001 order, Judge Muir addressed conspiracy claims raised by Dr. Babb that were premised upon "an alleged conspiracy between certain Geisinger Defendants and certain [CCH] Defendants." Federal Court Order #2, 9/14/01, at 17. In ruling on Dr. Babb's conspiracy claims at the summary judgment stage, Judge Muir concluded that Dr. Babb presented insufficient evidence regarding the existence of any conspiracies alleged in the complaint. *Id.* at 18. Judge Muir specifically found

> there is no evidence regarding the single most critical element upon which all of [Dr.] Babb's remaining claims are based (*i.e.*, the existence of a conspiracy or illicit agreement.) There was only one direct communication between a representative of Geisinger Defendants and a representative of [CCH] regarding [Dr.] Babb's application which provides any support at all to [Dr.] Babb's allegations. That communication is the conversation between Maxin and [Lance H.] Rose in September

of 1999, which shows only that there may have been an opportunity to conspire or reach an agreement.

. . . .

[T]he conversation between Rose and Maxin demonstrates merely an opportunity to conspire and nothing more. In that conversation Maxin informed Rose that Maxin would not attend the meeting to discuss [Dr.] Babb's application unless [Dr.] Babb executed a document releasing Maxin from liability for providing information relating to [Dr.] Babb's employment at the Clinic.

. . . .

No direct or circumstantial evidence has been presented that reasonably tends to prove a conscious commitment or a common scheme among the Defendants designed to achieve an unlawful objective.

Federal Court Order #1, 9/14/01, at 19-21. Judge Muir, thefore, concluded

[t]here is simply no evidence indicating that any decision adverse to [Dr.] Babb resulted from a conspiracy. Because no reasonable trier of fact could conclude, based on the record presented to us, that any conspiracy existed as alleged in the complaint we will grant Geisinger Defendants' motion for summary judgment as to the claims in Counts 6, 7, and 10.[11]

Federal Court Order #2, 9/14/01, at 17.

In Pennsylvania, a plaintiff must prove the following elements to establish a claim for civil conspiracy: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a

_____

[11] Count 6 in Dr. Babb's complaint alleged "all Defendants violated Section 1 of the Sherman Act when they acted in concert to monopolize the market for obstetrical and gynecological inpatient surgical services in a certain geographic area." Federal Court Order #2, 9/14/01, at 2-3. Count 7 alleged "all of the Defendants conspired to monopolize the market referenced in Count 6, thereby violating Section 2 of the Sherman Act." *Id.* at 3. Count 10 alleged "all of the Defendants unlawfully conspired against [Dr.] Babb." *Id.*

lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage.

*Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. 2004).

> It has long been the settled rule in this Commonwealth that proof of conspiracy must be made by full, clear and satisfactory evidence. The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy.

*Fife v. Great Atl. & Pac. Tea Co.*, 52 A.2d 24, 39 (Pa. 1947). Also, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. 2000). When a plaintiff's conspiracy claim lacks an underlying predicate cause of action, the conspiracy claim must fail as a matter of law. *See Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. 2008) ("Because we affirm the trial court's grant of summary judgment dismissing [a]ppellant's interference with contract claim, no predicate cause of action exists upon which [a]ppellants may assert claims for civil conspiracy."), *appeal denied*, 967 A.2d 960 (Pa. 2009).

With the foregoing principles in mind, we agree with the trial court's conclusion that the federal court's September 14, 2001 order bars Dr. Babb from raising his civil conspiracy claim *sub judice*. As the trial court noted, Dr. Babb and Geisinger "were parties to the federal action, in which a court of competent jurisdiction entered a final judgment," resolving "the controlling issues of conspiratorial conduct and improper motives by

Geisinger."[12]  Trial Court Opinion, 2/24/14, at 6-7.  In fact, the federal court's determination that the record lacked any evidence demonstrating the existence of a conspiracy between Geisinger and CCH was predicated on evidence presented by the parties.  Accordingly, because Dr. Babb and Geisinger were both parties to the federal action and litigated the issue of conspiracy, Dr. Babb is prohibited by the doctrine of *res judicata* from re-litigating in the matter *sub judice* the issue of conspiracy.

Even if we had not applied the preclusive doctrine of *res judicata*, Dr. Babb's conspiracy claim with respect to wrongful discharge would have failed, because Dr. Babb neglected to allege an independent cause of action for wrongful discharge.  **See supra**, **Phillips**; **see also Boyanowski v. Capital Area Intermediate Unit**, 215 F.3d 396, 405-06 (3d Cir. 2000) (citation omitted) ("The rule that civil conspiracy may not exist without an underlying tort is a common one.  Indeed, we are unaware of any jurisdiction that recognizes civil conspiracy as a cause of action requiring no separate tortious conduct.").  Similarly, Dr. Babb's conspiracy claim also fails because of our conclusion above with respect to Dr. Babb's defamation and interference with contract claims.

We now address Dr. Babb's third assertion of error.  Dr. Babb argues the trial court erred in applying the immunity provisions of Section 425.3 of

---

[12] There is no indication in the record that Dr. Babb did not have an opportunity to litigate the issue of conspiracy in the federal court.

- 29 -

the PRPA to his claims, because the application of the PRPA was precluded by the prior decision of this Court.[13]  We disagree.

As noted earlier, the prior panel of this Court reversed the trial court's grant of summary judgment—that was based on HCQIA immunity—in favor of Geisinger.  In so reversing, the panel concluded only that a genuine issue of material fact existed with respect to "whether Dr. Babb has met his burden to show that either the peer review process or Geisinger's belief that its actions were in furtherance of patient care was unreasonable" **under Section 11112(a) of the HCQIA**.  *Babb*, 47 A.3d at 1227.  The panel clearly did not address the issue of immunity under the PRPA.  *Id.* at 1230 (declining to address "the applicability of immunity under the PRPA").  Accordingly, the trial court did not err in addressing the issue of immunity under Section 425.3(a) of the PRPA.

Insofar as Dr. Babb argues Geisinger did not meet the requirements of Section 425.3, because "more than sufficient evidence that Geisinger [] acted with malice and bad faith" exists, we disagree for several reasons.  First, Section 425.3(a) of the PRPA does not contain any requirement that malice or bad faith be established.  Indeed, Section 425.3(a) of the PRPA plainly provides:

---

[13] To the extent Dr. Babb asserts that the trial court erred in finding the immunity provisions of the PRPA to be broader than the immunity provisions of the HCQIA, we decline to address this issue, because it was never raised before the trial court.  *See* Pa.R.A.P. 302(a).

(a) Notwithstanding any other provision of law, no person providing information to any review organization shall be held, by reason of having provided such information, to have violated any criminal law, or to be civilly liable under any law, unless:

(1) such information is unrelated to the performance of the duties and functions of such review organization, or

(2) such information is false and the person providing such information knew, or had reason to believe, that such information was false.

63 P.S. § 425.3(a). Based on our reading of the clear and unambiguous language of the PRPA, we disagree with Dr. Babb's contention that malice or bad faith are an element under Section 425.3(a). Second, to the extent Dr. Babb cites *Cooper v. Delaware Valley Medical Center*, 654 A.2d 547, 553-54 (Pa. 1995), to support his argument that malice and bad faith are required under Section 425.3, we find such reliance inapposite. In *Cooper* our Supreme Court addressed the issue of malice only under Section 425.3(b), which by its plain terms requires proof of malice. *See id.*; 63 P.S. § 425.3(b) ("[T]his subsection shall not apply with respect to any action taken by any individual if such individual, in taking such action, was motivated by *malice* toward any person affected by such action.") (emphasis added). Third, even if malice were an element under Section 425.3 of the PRPA, Dr. Babb does not cite any facts to establish malice. He only provides the bald remark that "sufficient evidence that Geisinger acted with malice and bad faith" exists. Dr. Babb's Brief at 63. Dr. Babb's broad remark about evidence favorable to his case is troubling, because he fails to provide any citation to the record. As we have repeatedly emphasized, we shall not develop an argument for the appellant, nor shall we scour the

J-A03023-15

record to find evidence to support an argument. *See J.J. DeLuca Co. v. Toll Naval Assocs.*, 56 A.3d 402, 411 (Pa. Super. 2012) (citation and quotation marks omitted).

We now address Dr. Babb's last argument that the trial court erred in finding PSGHS was not a proper party to this action. To support his argument, Dr. Babb points out

> [he] was hired by an entity known as the "Geisinger Clinic" in 1995. He was discharged by the "Geisinger Clinic" in May 16, 1997. The original Summons was filed against Robin E. Oliver, M.D. and Michael Chmielewski, M.D. and Geisinger Clinic in May 1998. Served by Sheriff was timely requested and a return was issued as to [all three of them.]
>
> The actual final confirmation of discharge of Dr. Babb was made by Bruce Hamory, M.D., on letterhead which identified him as Executive Vice President and Chief Medical Officer of the "*Penn State Geisinger Health System*." On June 5, 1998 [Dr. Maxin] used the same letterhead and identified himself as the Sr. Vice President Clinical Operations Western Region for the "*Penn State Geisinger Health Clinic*" in confirming that the termination was final and in making a demand for loan repayment. The NPDB Report was filed by "*Penn State Geisinger Clinic*."
>
> The corporate documents attached to PSGHS to the Brief in Support of Preliminary Objections unequivocally showed that "Geisinger Clinic" became the "Penn State Geisinger Clinic" *by a name change amendment*.
>
> . . . .
>
> On or about February 21, 2000, the Penn State Geisinger Clinic again renamed itself and dissolved ties to the Penn State Geisinger Health System Foundation by further amendment to its bylaws.

Dr. Babb's Brief at 71-72 (emphasis in original). Dr. Babb, however, cites no legal authority for the proposition that an entity that no longer exists when a complaint is filed properly may be included as a party to the action.

We, therefore, agree with the trial court's determination that, "[a]lthough [Dr.] Babb has suggested that the doctrine of successor liability may apply, he has not provided the [c]ourt with any authority establishing a basis for successor liability in this case." Trial Court Opinion, 2/24/14, at 18.

We also disagree with Dr. Babb's suggestion that the trial court lacked authority to revisit the issue of whether PSGHS was a proper party to this action after ruling on it at the preliminary objection stage. A trial judge always may revisit his or her own prior pre-trial rulings in a case without clashing with the law of the case doctrine. *See In re Estate of Elkins,* 32 A.3d 768, 777 (Pa. Super. 2011) (citation omitted), *appeal denied*, 57 A.3d 71 (Pa. 2012); *see also BuyFigure.com, Inc*, 76 A.3d at 558-59 (noting that "[a] trial court has the inherent power to reconsider its own rulings").

Lastly, to the extent Dr. Babb argues Geisinger waived the issue of whether PSGHS was a proper party by failing to raise it in its motion for summary judgment, we reject the argument as misleading. Our review of Geisinger's summary judgment motion reveals that Geisinger indeed raised this issue. Geisinger's Motion for Summary Judgment, 11/4/13, at ¶ 141.

In sum, we reverse the trial court's grant of summary judgment only with regard to the issue of breach of contract and remand the matter to the trial court because a genuine issue of material fact exists as to whether (1) Dr. Babb was an at-will employee, (2) Geisinger afforded Dr. Babb's an opportunity to review the underlying grievances prior to termination and (3) Geisinger had any contractual obligations to Dr. Babb that Geisinger failed to

honor during the course of Dr. Babb's employment with Geisinger. We affirm the trial court's grant of summary judgment with respect to all remaining issues.[14]

Order affirmed in part. Reversed in part. Case remanded. Jurisdiction relinquished.

Justice Fitzgerald joins the memorandum.

Judge Mundy files a concurring statement, in which Justice Fitzgerald joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/3/2015

---

[14] On October 23, 2014, Geisinger filed a "Motion to Quash and Dismiss Appeal," because, according to Geisinger, Dr. Babb failed to comply with the requirements of the Pennsylvania Rules of Appellate Procedure with respect to briefing and the reproduced record. As we observed above, we recognize and strongly disapprove of the various deficiencies in Dr. Babb's brief and his reproduced record. Despite the difficult task of understanding and determining Dr. Babb's arguments, however, we managed to glean enough information from the record to engage in meaningful appellate review. Accordingly, we deny Geisinger's motion to quash the appeal.